**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN CAMPBELL and | ) | |
| PALOMA FERNANDEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 18-cv-02052 |
| | ) | |
| v. | ) | |
| | ) | |
| LOYOLA UNIVERSITY OF CHICAGO, | ) | |
| an Illinois not-for-profit corporation, | ) | |
| | ) | Jury Demanded |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Alan Campbell and Paloma Fernandez (collectively "Plaintiffs"), by their undersigned counsel, for their Complaint against Defendant Loyola University of Chicago ("Defendant" or "Loyola"), state as follows:

### Introduction

For approximately two hours on Saturday, February 24, 2018, Plaintiffs Alan Campbell, a black Loyola Senior student, and Paloma Fernandez, a Latina (brown) Loyola Senior student, feared for their safety and each other's safety at the hands of Loyola's Campus Safety officers, directed by Loyola's administration, while exercising their right to freedom of speech, expression, and assembly. For those two hours, Plaintiffs learned that neither the rights granted by the United States Constitution nor Loyola's Code of Conduct applied to them as students on Loyola's campus. Loyola continues to violate Plaintiffs' rights by intentionally placing Plaintiffs in a false light to Loyola students, alumni, and the public to support Loyola's self-serving narrative that the February 24th "incident was not about race – it was about safety."

Plaintiffs sue Loyola for its Campus Safety officers' violation of their civil rights for the use of excessive force when Loyola Campus Safety officers threw Plaintiff Campbell to the ground, three (3) of Loyola's officers "jumped" on top of Plaintiff Campbell, restrained him – even though Plaintiff Campbell was not resisting – handcuffed him, and detained him in Loyola's building and in a police car. One of Defendant's officers grabbed Plaintiff Fernandez by the shirt collar, pulled her by the collar – chocking her – pulled her across the area and pushed her up against the wall.

Defendant treated Plaintiffs with such violence in retaliation for Plaintiffs exercising their First Amendment Rights in asking, "what's going on over there," regarding two black men who Campus Safety officers were searching "spread eagle" next to the entry to the Loyola basketball game and for Plaintiffs calling attention to the officers' actions in dealing with the black men. Defendant's actions against Plaintiffs were at the direction of Loyola and were meant to demean, embarrass, harass, intimidate, physically harm, and punish Plaintiffs and anyone else daring to make a statement questioning the Campus safety officers' methods for "protecting" the "safety of Loyola."

Defendant compounded its actions by intentionally defaming Plaintiffs after the incident, telling the public that "several people attempted to interfere with Campus Safety Offers. These individuals[1] initially failed to identify themselves as students . . . [a]ttempting to interfere with the questioning, one individual was not compliant with a Campus Safety officer who attempted to keep that person from interfering and at a safe distance from the investigation. The Campus Safety officer then attempted to handcuff that individual. The individual resisted and was brought to the ground and restrained for the safety of the individual and others. Loyola's

---

[1] Loyola's student-run newspaper, the Loyola Phoenix, identified Plaintiffs by name as the individuals referenced in the incident.

PLAINTIFF'S COMPLAINT

narrative furthers a stereotypical view that Plaintiffs – black and brown students – must be restrained for their safety and the safety of others.

According to campus safety, a second individual, . . . attempted to interfere with this action and was physically restrained by a Campus Safety officer."  The Loyola Phoenix, the school's student newspaper, also falsely reported that "Campus Safety arrested Loyola student Alan Campbell," when Mr. Campbell was never arrested.  In doing so, Defendant has created an online footprint of false and damaging statements about Plaintiffs mere months before they are set to graduate from Loyola and enter the workforce, causing irreparable damage to their reputations and, from an employment standpoint, making any degree Plaintiffs would receive from Loyola virtually worthless.

Plaintiffs were also denied their rights because of their races and colors, among other things, to express free speech on Loyola's campus; to be free from "abusive conduct," which Loyola "strictly prohibits"; and the right to use Loyola's facilities without interference by Campus Safety officers.

For Defendant's actions above and as set out more fully below, Plaintiffs seek relief from Defendant.

### Jurisdiction and Venue

1.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) over the subject matter of this lawsuit as it arises under the First, Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; color of state law, of rights secured by the Constitution and laws of the United States; and 42 U.S.C. § 1988 with respect to Plaintiffs' claims for attorneys' fees and costs.

2.      Venue is proper in the United States District Court for the Northern Illinois District, Eastern Division, pursuant to 28 U.S.C. § 1391 because the events giving rise to the instant claims occurred within this District and the parties reside in this District.

3.      The Court further has supplemental pendent jurisdiction pursuant to 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and pendent causes of action derive from a common nucleus of operative facts.

## Parties

4.      Plaintiff Campbell is an African American (black) man attending Loyola as a senior student and resides in Chicago, Illinois.  Mr. Campbell weighs approximately 130 pounds.

5.      Plaintiff Fernandez is a Latina (brown) female attending Loyola as a senior student and resides in Chicago, Illinois.  Ms. Fernandez weighs approximately 125 pounds.

6.      Loyola is a not-for-profit corporation in the State of Illinois, responsible for establishing and enacting Loyola's  policies and procedures that applied to deprive Plaintiffs' of their constitutional rights; for the safety and security of its students on Loyola's property for establishing rules and regulations that govern Loyola's operation;  for managing and overseeing the Department of Campus Security ("Campus Security"), which employs sworn police and non-sworn security officers; and for managing and overseeing the Loyola Phoenix, the official student newspaper. With respect to the claims in the Complaint, Loyola and its agents and representatives, acted under the color of law and is sued in its official capacities.

## Factual Allegations

**Plaintiffs Observed Campus Safety Officer Frisking Two Black Men at the Entry to the Basketball Game on Loyola's Campus**

7.      On February 24, 2018, Mr. Campbell and Ms. Fernandez attended a student protest against the University's funding of a new athletic facility and after the protest, stood in

front of the Halas Recreation Center, which is adjacent to the Gentile Arena, both on Loyola's campus, where they observed Campus safety officers frisking two black men "spread eagle" near the front entrance to Halas Recreation Center just before the Loyola and Illinois State University men's basketball game.

#### Mr. Campbell Looking at the Officers' Public Searches, asked "What's Going On Over There?"

8.      Mr. Campbell started looked in the direction of the officers and began to chant, "what is going on over there?"

9.      The officers moved the two black men they detained around the corner from the basketball entry way and Mr. Campbell and Ms. Fernandez followed at a distance.  One of the officers told Mr. Campbell "to step back" and Mr. Campbell instantly did so, however, Mr. Campbell's compliance to the command did not stop officers from forcing Mr. Campbell to the ground.

10.      An unknown Caucasian man approached Mr. Campbell, put himself in the area between Mr. Campbell and the officers, and told Mr. Campbell the police officers are doing their jobs.

#### An Officer Forced Mr. Campbell to the Ground, Two Other Officers Pounced on Him and Handcuffed him; One Officer Grabbed Ms. Fernandez by the Collar, Choked her by Pulling her Shirt Collar, and Pulled and Pushed her to the Wall

11.      At that time, one of the officers approached Mr. Campbell, asked if he was a Loyola student, but before Mr. Campbell responded, the officer quickly and aggressively grabbed Mr. Campbell and in a "take-down" maneuver and forced Mr. Campbell to the ground.

12.      While the first officer aggressively forced Mr. Campbell to the ground, face-down and held him there, two other officers "jumped" on Mr. Campbell, one on Mr. Campbell's legs

and the other around his shoulder area. One of the officers pulled Mr. Campbell's hands behind his back and handcuffed Mr. Campbell.

13. Although the Caucasian man who approached Mr. Campbell was closer to the officers than Mr. Campbell, the officers neither aggressively forced the Caucasian man to the floor nor handcuffed him.

14. Mr. Campbell did not resist the officers during the take-down, while the three officers where on top of Mr. Campbell holding him face-down to the floor or when they handcuffed Mr. Campbell.

15. Ms. Fernandez attempted to help Mr. Campbell by trying to distract one of the officers, that officer stood up, forcefully threw his hand into Ms. Fernandez's neck and chest area, grabbed Ms. Fernandez by her shirt collar, pulled her by the shirt collar, across her throat – which choked her – as he forcefully pulled Ms. Fernandez across an open area and pushed Ms. Fernandez to the wall. The officer took his hands off of Ms. Fernandez only after students standing by yelled at the officer, "what are you doing?" "Leave her alone."

16. Neither Mr. Campbell nor Ms. Fernandez demonstrated any sort of physical resistance or aggression toward the police officers; threatened gestures or sudden movements towards the Campus Safety officers; or engaged in any behavior that caused any of the officers to credibly feel threatened. Neither did Plaintiffs' behavior justify any use of force -- let alone, the aggressive nature in which officers handled Mr. Campbell and Ms. Fernandez.

**While on the Floor, Mr. Campbell Repeatedly Told Officers, "I am a Student Here!"**

17. Eventually, the officers allowed Mr. Campbell to sit on the floor, handcuffed with a Campus Safety officers' hand on his backpack and while doing so, Mr. Campbell repeatedly

told the officers that, "I'm a student here," "I am a senior here," and "I am a business student here."

18.     Two officers allowed Mr. Campbell to stand, while they put their hands-on Mr. Campbell's backpack, which was on Mr. Campbell's back and, one of the officers, in response to an individual's inquiry about the officer's actions toward Mr. Campbell, stated "out here, it's embarrassing, he's been embarrassed."

19.     While still handcuffed, the officers escorted Mr. Campbell into the nearby classroom and one of the officers stated "She <sic> said bring him in.  [Indecipherable name] said bring him in."

20.     At all times, Jessica Landis, Loyola Assistant Dean of Students and the Assistant Dean for Student Safety and Equity and Title IX Deputy Coordinator, was present, during the officers' aggressive treatment of Mr. Campbell and Ms. Fernandez, but did nothing to stop the officers' aggression towards Plaintiffs.

21.     William Rodriguez, Loyola Dean of Students, at all times had authority to have Campus Safety officers release Mr. Campbell, but he intentionally delayed his decision to direct the Campus Safety's officers to relinquish their custody of Mr. Campbell, extending the period of time Loyola violated Mr. Campbell's constitutional rights.

22.     Eventually, the officers took the handcuffs off of Mr. Campbell, but in further intent to embarrass Mr. Campbell, officers began walking Mr. Campbell through the building and outside to the officers' car.  On the way to the car, an officer told Ms. Fernandez and other students present, that they would release Mr. Campbell if he showed his Loyola student identification card.   Ms. Fernandez approached Mr. Campbell and told him to show his identification card to the officers.  Mr. Campbell took his identification card from his pocket,

showed it to the officers, but the officers did not release Mr. Campbell. Instead, the officers continued to walk Mr. Campbell to the officers' car.

23. The officers put Mr. Campbell in the back seat of the officers' car and attempted to drive away. Students, including Ms. Fernandez, stood in front of and surrounded the officers' car and prevented the car from moving. The officers kept Mr. Campbell in the car for approximately 35 minutes and one of the officers continued to antagonize Mr. Campbell, attempting to provoke Mr. Campbell to action by saying "none of these students outside surrounding the car give a damn about you" and "you will likely be expelled." Mr. Campbell, however, did not respond. The officers released Mr. Campbell after 35 minutes in the car after Mr. Rodriguez finally directed them to do so.

**Loyola Encouraged and Condoned Plaintiffs' Actions
in Loyola's Community Standards Code of Conduct**

24. Loyola published the "Community Standards 2017-2018" ("Community Standards"), that provides the policies and procedures that apply to the students at Loyola.

25. The Student Code of Conduct stated explicitly in the Community Standards includes, "As living representatives of the values and mission of the University, students should constantly strive to exemplify the values of service, justice, learning, and faith." *See* Community Standards, p. 9, article II.

26. At Loyola, "[a]busive conduct is strictly prohibited. Abusive conduct includes any intentional conduct that inflicts or attempts to inflict bodily harm or severe emotional harm upon any person, any reckless action that could result in bodily harm, and any action that would reasonably cause another to be fearful that their health or safety is in immediate danger." *See* Community Standards, p. 9, section 201.1.

27.     At Loyola, " . . . any act of retaliation taken against another is a serious violation of University policy." *See* Community Standards, p. 14, section 201.20.

28.     "[A]ll Loyola students have the right to freedom of speech, expression, and assembly, . . . Students are free to express their views individually or in organized groups, on any topic, on all Chicago campuses, subject only to rules necessary to preserve the equal rights of others and the other functions of the University." *See* Community Standards, p. 51, section 607.

29.     "Demonstrations and fixed exhibits – regardless of the content or viewpoints expressed – are permitted on Loyola's Lake Shore and Water Tower campuses so long as they are orderly, lawful, and congruent with the standards below and all other policies within the Community Standards." *See* Community Standards, p. 51, section 607.

30.     On February 24, 2018, Plaintiffs' actions complied with Loyola's Code of Conduct when they "exemplif[ied] the values of service, justice, learning, and faith," as they observed what they believed to be abusive and racist conduct by officers toward the two black men in the common area in front of the Halas Recreation Center.

31.     Plaintiffs were not only in full compliance with the Loyola's Community Standards, which states that "all Loyola students have the right to freedom of speech, expression, and assembly" and "students are free to express their views…on any campus," they also were well within these rights under the U.S. Constitution.

**Loyola Claim that the Incident was "Not About Race – it Was About Safety," was Intended to Enhance Loyola's Public Image because of the Aggressive Nature Officers took with Plaintiffs, and was at the Expense of Plaintiffs' Public Images**

32.     On February 24, 2018, Loyola Phoenix published an article stating that "Campbell was later taken into custody by Campus Safety after interfering;" "Campbell refused to identify himself as a Loyola student and did not comply with the officer attempting to keep

Campbell away from the investigation;" and "the Campus Safety officer struggled to handcuff Campbell because of his resistance, and Campbell was taken to the ground." *See* Exhibit A, attached hereto.

33.     On February 25, 2018, Loyola Campus Safety published a communication to the Loyola citizenry, which fit Loyola's narrative that the incident was "not about race – it was about safety," but erroneously portrayed Plaintiffs in a poor light to the public, in furtherance of Loyola's stereotypes of black and brown students and community members. *See* Exhibit B, attached hereto. Defendant intentionally put Plaintiffs in a false light by telling the public that "several people attempted to interfere with Campus Safety Offers. These individuals[2] initially failed to identify themselves as students . . . [a]ttempting to interfere with the questioning, one individual was not compliant with a Campus Safety officer who attempted to keep that person from interfering and at a safe distance from the investigation. The Campus Safety officer then attempted to handcuff that individual. <u>The individual resisted and was brought to the ground and restrained for the safety of the individual and others.</u> A second individual, . . . attempted to interfere with this action and was physically restrained by a Campus Safety officer." *Id*. (Emphasis Added). The Loyola Phoenix also falsely reported that "Campus Safety arrested Loyola student Alan Campbell," but Plaintiff Campbell was never arrested. *Id*. Defendant has defamed Plaintiffs and stereotyped them consistent with the images that Loyola has created for black and brown students and community members – that they are unsafe and dangerous – on Loyola's campus.

34.     On March 1, 2018, Loyola Phoenix published an article titled "Students Demand Accountability from University at Town Hall," which again falsely reported that "[t]he town hall

---

[2] Loyola's student-run newspaper, the Phoenix, identified Plaintiffs by name as the individuals in the incident.

came after the University's Campus Safety arrested Loyola student Alan Campbell"; and "Campbell was arrested and eventually released." *See* Exhibit C, attached hereto. On March 14, 2018, the Loyola Phoenix again falsely reported and published to the world that "[o]n Feb. 24, Loyola student Alan Campbell was arrested by Campus Safety and Paloma Fernandez was seized by the collar of her shirt for allegedly interfering in a Campus Safety search."[3] *See* Exhibit D, attached hereto.

35.     Robert Herguth is, and was at all times relevant to this Complaint, the Faculty Adviser of the Loyola Phoenix and has responsibility for advising the student editor-in-chief, managing editor, news editor and assistant news editors in ensuring that the student newspaper publishes truthful and nondefamatory statements.

36.     Other external media organizations to Loyola propagated the false statement that Mr. Campbell was "arrested," as these organizations referenced the articles carelessly published by the Loyola Phoenix newspaper.

37.     Loyola continues to violate Plaintiffs' rights by intentionally placing Plaintiffs in a false light to Loyola students, alumni and the public to create Loyola's narrative that the February 24th "incident was not about race – it was about safety," in an effort to put Loyola in a good light and to cover up Loyola's aggressive treatment of Plaintiffs and in furtherance of Loyola's stereotypical views that black and brown students and community members create an unsafe environment on Loyola's campus, all with the intent to try to justify Loyola's campus safety officers' aggressive, and unnecessary treatment of Plaintiffs and at Plaintiffs' detriment.

## Statement of Claims for Relief

### Count I

---

[3] The articles were written by Loyola students Michael McDevitt, Mary Norkol and Mary Chappell who are not parties to this lawsuit, but who will hopefully learn a great deal about the importance of verifying the truthfulness of the facts they report before they enter the journalism profession.

## Violation of 42 U.S.C. § 1983
### Excessive Force

38.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

39.     At all times relevant to this claim, the police officers were acting under color of state law in their capacities as Loyola Campus Security law enforcement officers.

40.     Plaintiffs are senior Loyola students and had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in their persons against unreasonable seizures through excessive force.

41.     Any reasonable law enforcement officer knew or should have known of this clearly established right.

42.     Campus Safety officers engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting them, violating Mr. Campbell's and Ms. Fernandez's Fourth Amendment right to be free from excessive force.

43.     Campus Safety police officers' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Mr. Campbell's and Ms. Fernandez's federally protected rights.

44.     Campus Safety officers engaged in the acts and omissions described herein pursuant to the custom, policy, and practice of the Loyola's Department of Campus Safety, which encourages, condones, tolerates, and ratifies the use of excessive force and deprivation of constitutionally protected interests by law enforcement officers.

45.     The acts or omissions of Defendant, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Plaintiffs' damages.

46.     As a direct result of the Campus Safety officers' intentional, unlawful actions as described above, Plaintiffs suffered actual physical harm, embarrassment, humiliation, emotional and economic injuries in an amount to be proven at trial.

47.     Plaintiffs have been and continue to be damaged by the Campus Security officers' use of excessive force.

**Count II**
**Violation of 42 U.S.C. § 1983**
**Unlawful Seizure**

48.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

49.     At all times relevant to this claim, the officers were acting under color of state law in their capacities as Loyola Campus Security law enforcement officers.

50.     Plaintiffs had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in their persons against unreasonable seizures through false arrests.

51.     Any reasonable law enforcement officer knew or should have known of this clearly established right.

52.     Campus Safety officers intentionally, knowingly, recklessly, and excessively subdued, restrained, detained, and falsely apprehended Plaintiffs without any reasonable justification or probable cause.

53.     Campus Safety officers forcibly seized Plaintiffs' bodies and forcibly and intentionally restrained Plaintiffs against their will, despite lacking any legally valid basis to do so.

54.     Campus Safety officers did not at any time have probable cause, reasonable suspicion, or any other legally valid basis to believe that Plaintiffs committed or were committing any violation of the law prior to seizing and continuing to restrain them.

55.     Campus Safety officers did not at any time have a warrant authorizing such seizure of Plaintiffs' bodies.

56.     Campus Safety officers' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiffs' federally protected rights.

57.     Campus Safety officers engaged in the acts and omissions described herein pursuant to the custom, policy, and practice of Loyola's Department of Campus Safety, which encourages, condones, tolerates, and ratifies false arrests, unlawful seizures, and deprivation of constitutionally protected interests by law enforcement officers.

58.     The acts or omissions of Defendant, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Plaintiffs' damages.

59.     As a direct result of Defendant's unlawful actions as described above, Plaintiffs suffered and continue to suffer actual physical harm, embarrassment, humiliation, emotional and economic injuries in an amount to be proven at trial.

60.     Plaintiffs have been and continue to be damaged by Campus Security officers' unlawful seizure and detainment.

**Count III**
**Violation of 42 U.S.C. § 1983**
**Freedom of Speech**

61.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

62.     At all times relevant to this claim, the officers were acting under color state law in their capacities as the Loyola's Campus Security law enforcement officers.

63.     Plaintiffs had a clearly established constitutional right under the First Amendment to the United States Constitution to engage in constitutionally protected activity and under Loyola's Community Standards and Code of Conduct, including challenge to law enforcement and verbal opposition to the officers' action, without fear of retaliation.

64.     Any reasonable law enforcement officer – especially Loyola's Campus Safety officers – knew or should have known of these clearly established rights.

65.     Plaintiffs were engaging in constitutionally protected activity, including but not limited to, verbal protest of the officers for their objectionable conduct.

66.     Plaintiffs' speech was related to a matter of important public concern.

67.     Campus Safety officers' unlawful seizure of, and excessive force against, Plaintiffs caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

68.     Campus Safety officers' unlawful seizure of, and excessive force against, Plaintiffs were substantially motivated as a response to Plaintiffs' exercise of constitutionally protected conduct.

69.     Plaintiffs' right to speak out on issues of public concern outweighed any of Defendant's rights, especially given Loyola's Code of Conduct and the recent (and past) history of excessive force used by police officer against black men in this country.

70.    The Campus Safety officers did not act with restraint in the face of verbal challenges to police action, but instead, retaliated against Plaintiffs for their verbal challenges to the officers' actions in apprehending and publicly searching the two black male ticket resellers in front of the entry to the basketball game.

**Count IV**
**Defamation**

71.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

72.    Loyola Phoenix falsely reported in its published articles in February and March 2018, that Mr. Campbell was "arrested" on February 24, 2018.

73.    To the contrary, Loyola's Campus Safety police officers never arrested Mr. Campbell and Loyola Phoenix's publishing and re-publishing of this untrue fact caused and continues to cause damage to Mr. Campbell's reputation.

74.    Mr. Campbell graduates from Loyola in May 2018 and besides Mr. Campbell's family, friends, and acquaintances viewing Mr. Campbell negatively because of the false report, future potential employers reading the false report that Mr. Campbell was arrested have the potential to also see Mr. Campbell negatively and refuse to hire Mr. Campbell, thus prevent Mr. Campbell from finding employment after graduation, making any degree Mr. Campbell would receive from Loyola virtually worthless.

75.    Loyola Phoenix reporting that Mr. Campbell was "arrested" by Campus Safety has harmed and continues to harm to Mr. Campbell's reputation, lowers Mr. Campbell in the eyes of the community, and deters others from associating with Mr. Campbell.

76.     Plaintiff Campbell has been and continues to be damaged by Loyola Phoenix's false reporting and re-publishing that Mr. Campbell was "arrested."

## Count V
## Defamation under False Light

77.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

78.     On February 25, 2018, Department of Campus Safety published a communication titled "Statement on incident at Lake Shore Campus" to the Loyola citizenry portraying Plaintiffs in a false light to the public to explain away the egregious actions of Loyola's Campus Safety officers against Plaintiffs on February 24, 2018.

79.     Campus Safety erroneously portrayed the Plaintiffs as having "attempted to interfere with Campus Safety officers" and "initially fail[ing] to identify themselves as students… ."

80.     The Campus Safety communication further stated that "one individual was not compliant with a Campus Safety officer," when the individual "attempted to interfere with the questioning" of the two ticket resellers when the officer was "attempting to keep that person from interfering and at a safe distance from the investigation."

81.     Mr. Campbell did not interfere with the Campus Safety officers, as his First Amendment right to free speech was his only action on February 24, 2018.

82.     Mr. Campbell stepped back when an officer commanded him to do so, and kept a reasonable distance between himself and the Campus Safety police officers during the initial search and subsequent activities regarding the men that were selling the basketball game tickets.

83.     In fact, the person more likely to have interfered with the officers by being too close to the officers' "investigation," was the Caucasian man who confronted Mr. Campbell by entering the space between the police officers and Mr. Campbell.

84.     The Campus Safety, however, did not mention the Caucasian man in its communication.

85.     Although the Campus Safety officer inquired as to whether Mr. Campbell was a Loyola student, but before Mr. Campbell responded, the officer immediately took Mr. Campbell to the ground.

86.     Within seconds, the other two officers pounced on Mr. Campbell – now a total of three (3) officers on Mr. Campbell – who was face down on the floor.  Mr. Campbell repeatedly told the officers, "I'm a student here," "I am a senior here," and "I am a business student here."

87.     The Campus Safety communication intentionally did not provide any details of the officer's failure to provide Mr. Campbell an opportunity to respond.

88.     Campus Safety never questioned whether Ms. Fernandez was a Loyola student until after the officer grabbed, chocked, pushed and pulled Ms. Fernandez.

89.     This Campus Safety communication also stated that the "individual resisted" the Campus Safety officer's "attempt to handcuff that individual," but Mr. Campbell did not resist the Campus safety officers' attempt to handcuff him.[4]

90.     Campus Safety communication additionally described that a second individual "attempted to interfere with this action and was physically restrained by a Campus Safety officer," in reference to Ms. Fernandez, but she was simply attempting to help defend Mr.

---

[4] Even had Mr. Campbell resisted – which he did not – Mr. Campbell weighs approximately 130 pounds, much less than the take-down officer, and there would be no reason for three (3) Campus Safety officers to pounce on Mr. Campbell.

Campbell from the aggressive attack by Campus Safety officers, and to distract one of the three officers holding Mr. Campbell to the ground.

91.    The Campus Safety communication made no mention of the excessive force used on Plaintiffs.

92.    Even though the Campus Safety communication was published without mention of Plaintiffs' names, the Loyola Phoenix reporting referenced the Campus Safety communication and published Plaintiffs' names, directly identifying Plaintiffs as the individual's referenced in the communication.

93.    Loyola Phoenix also published untrue statements in the articles that Plaintiff Campbell was "arrested" on February 24, 2018.

94.    The Campus Safety communication intentionally placing Plaintiffs in a false light to Loyola students, alumni and the public to create Loyola's narrative that the February 24th "incident was not about race – it was about safety," in an effort to put Loyola in a good light and to cover up Loyola's aggressive treatment of Plaintiffs and in furtherance of Loyola's stereotypical views that black and brown students and community members create an unsafe environment on Loyola's campus, all with the intent to try to justify Loyola's Campus Safety officers' aggressive, and unnecessary treatment of Plaintiffs and at Plaintiffs' detriment.

95.    Department of Campus Safety acted with reckless disregard for the truth by mischaracterizing the events that occurred on February 24, 2018 and by attempting to cover up the egregious actions of its officers by placing Plaintiffs in a false light in the Campus Safety communication.

96.    Department of Campus Safety and the Loyola Phoenix placed Plaintiffs before the public in a false light that was and continues to be highly offensive to a reasonable person.

97.     Loyola Phoenix acted with reckless disregard for the truth by mischaracterizing the events that occurred on February 24, 2018 and publishing multiple untrue statements that Mr. Campbell was "arrested."

98.     At the time of filing this Complaint, neither the Department of Campus Safety nor Loyola Phoenix has published any corrections to the mischaracterization of and untrue statements about the events that occurred on February 24, 2018.

99.     Plaintiffs have been and continue to be damaged by the continual efforts of the Loyola Department of Campus Safety's and the Loyola Phoenix's inaccurate reporting of Plaintiffs in this matter.

100.    Defendant's untrue and inaccurate mischaracterizations place Plaintiffs in a false light to the public, has and continues to cause Plaintiffs damages to their reputations, including their friends, families, acquaintances and has the potential to negatively impact Plaintiffs' employment, now and in the future, making any degree Plaintiffs may receive from Loyola virtually worthless.

**Count VI**
**Intentional Infliction of Emotional Distress**

101.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

102.    Department of Campus Safety and its sworn officers conduct in apprehending Plaintiffs was extreme and outrageous.

103.    Not only were the officers in full uniform with holstered handguns, the officers that forced Mr. Campbell to the ground and the other two officers who pounced on Mr. Campbell, were all much heavier than Mr. Campbell and much stronger than Mr. Campbell. The

officer that choked, pulled and pushed Ms. Fernandez was more than three times her weight and is a man.

104.    Given the killings of black males over the recent years at the hands of police officers across the United States, the Campus Safety officers' harsh treatment of Plaintiffs was intended to send them a strong message that black and brown Loyola students have no constitutional rights (or Loyola Code of Conduct rights) to speak up when they see potential wrong doing against black males on Loyola's campus. Campus Safety officers intentionally by their aggressive treatment, put the fear in Mr. Campbell for his safety and his life and showed how officers can and do treat black men in custody.

105.    The Campus Safety officers' intent was clearly to embarrass Mr. Campbell and one officer stated on a recorded video "[f]or out here, it's embarrassing, he's been embarrassed."

106.    Even after Mr. Campbell told officers that he was a student and produced his Loyola photo identification card to the officers, the Campus Safety officers were told to "bring him in," and kept Mr. Campbell in the back of the police car, for approximately 35 minutes, while the officer in the car kept antagonizing Mr. Campbell telling him that he would likely be expelled.

107.    Campus Safety officers knew or should have known there was a high probability that the officers' conduct would cause severe emotional distress to Ms. Fernandez when she observed her close friend, Mr. Campbell, aggressively taken down by an officer, two other officers pouncing on Mr. Campbell, handcuffing Mr. Campbell, and taking him to the police car to be transported. In fact, Ms. Fernandez in an attempt to keep Mr. Campbell safe, stood with other Loyola students in front and around the police car where officers had detained Mr. Campbell, to prevent the car from moving.

PLAINTIFF'S COMPLAINT

108.     Additionally, the officer who grabbed, choked, pulled and pushed Ms. Fernandez knew or should have known his actions would cause her severe emotional distress, not only was the police officer in full uniform with a holstered handgun, he was also twice her weight, a man, and much stronger than Ms. Fernandez.

109.     Department of Campus Safety's and its sworn officers' conduct caused Plaintiffs severe emotional distress, as they fear that they may be attacked by officers – especially Loyola Campus Safety officers -- simply for making a verbal statement about officers' actions, even though the U.S. Constitution would allow them to voice their opinion.  Plaintiffs have lost sleep, increased stress levels, and anxiety because of Loyola's actions during the February 24, 2018 incident and its continued efforts, through Loyola's communications, to place the blame for Loyola's actions on Plaintiffs.

110.     Given the Campus Safety officers' actions towards Plaintiffs, a reasonable person would suffer severe emotional distress.

**Count VII**
**Violation of 42 U.S.C. § 1983**
**Failure to Train and Supervise**

111.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

112.     Tom Murray, as Chief of Police and Director of Campus Safety, maintains the officers' policies and procedures for Loyola's Campus Safety, but Loyola and Murray failed to properly train, supervise, and discipline its officers that apprehended Plaintiffs (who are Loyola students), with respect to the use of excessive force, unlawful seizures, false arrests, just enforcement of laws, equal protection of the laws, and freedom of speech.

113.    The harm to Plaintiffs by Loyola and Loyola's violations of Plaintiffs' constitutional rights were foreseeable and a consequence of Loyola's failure to properly train and supervise the Campus Safety officers, making Loyola deliberately indifferent to the constitutional rights of its students and the general public by failing to properly train, monitor, supervise, and discipline its employees with respect to the use of excessive force, unlawful seizures and false arrests, and First Amendment retaliation.

114.    Loyola could have and should have pursued reasonable methods of training, monitoring, supervising, and disciplining its employees and because of its failure to do so, Plaintiffs suffered and continue to suffer damages to be proven at trial.

## Count VIII
### Battery

115.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

116.    On February 24, 2018, a Campus Safety officer forcibly and aggressively, physically grabbing Mr. Campbell and violently took him down to the ground, the two other officers who pounced on Mr. Campbell, and the officer who grabbed, choked, pulled and pushed Ms. Fernandez, did so with deliberate violence and oppression; without legal justification and with complete disregard for and total indifference to the safety and well-being of Plaintiffs; and without Plaintiffs' consent.

117.    The Campus Safety officers committed battery against Plaintiffs.

118.    The Campus Safety officers' battery of Plaintiffs caused Plaintiffs to suffer ongoing injury and severe emotional distress and educational harm that will continue.

**Count IX**
**Violation of 42 U.S.C. § 1981**
**Denial of Rights due to Race**

119.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

120.    The United States Code (42 U.S.C. § 1981) states, in pertinent part,

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts …, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]

121.    Plaintiffs, black and brown, tuition-paying Loyola students, are under a contract with Loyola to obtain their undergraduate degrees; to express free speech on Loyola's campus (including within its facilities); to be free from "abusive conduct," which according to Loyola is "strictly prohibited;" to be free from retaliation; to freely express Plaintiffs' views "on any topic, on all Chicago campuses;" and to have the right to use Loyola's facilities, including the Halas Recreational Center, and to be free from interference with their use of Loyola's facilities by Campus Safety officers.

122.    Loyola's Caucasian students are free to use Loyola's facilities, to express their freedom of speech and are free from Campus Safety officers interfering with their use of Loyola's facilities.

123.    Because of their color and Loyola's stereotype of black and brown students and community members as unsafe, Loyola's apprehension and the violent nature of the apprehension of Plaintiffs' constituted an impairment of Plaintiffs' contract with Loyola, under color of state law, in violation of 42 U.S.C. § 1981, and done with malice or reckless indifference to Plaintiffs' federally protected rights because the Campus Safety officers knew or should have known that their actions violated federal law.

124.     Plaintiffs have a private right of action under 42 U.S.C. § 1983 against Loyola for violation of Plaintiffs' federally protected rights secured by 42 U.S.C. §1981.

125.     Loyola's Campus Safety officers intentionally caused Plaintiffs to suffer ongoing injury and severe emotional distress and educational harm that will continue and Loyola's actions caused and continue to cause Plaintiffs' damages.

**Count X**
**Violation of 42 U.S.C. § 2000d et seq.**
**Race Discrimination under Title VI**

126.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

127.     Loyola, a recipient of federal funds, intentionally discriminated against Plaintiffs on the basis of their race, color, or ethnicity in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., by the violent manner in which they apprehended Plaintiffs without cause, violating their constitutional freedoms, and committing battery against Plaintiffs. Defendant's discriminatory actions excluded Plaintiffs from participating in the activities upon Loyola's campus and denied the benefits of Loyola's facilities, where Plaintiffs' had and have a right to be.

128.     Title VI, 42 U.S.C. § 2000d, specifically states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

129.     Loyola's actions against Plaintiffs violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, a violation of Title VI, when committed by an institution like Loyola that accepts federal funds.

130.    Plaintiffs have been and will continue to be injured by Loyola because Loyola has and will continue to deny African Americans (black) and Latina (brown) students and community members, equal constitutional freedoms with other U.S. citizens in Loyola's community on the basis of race, color and ethnicity due to its Campus Safety's intentionally discriminatory policies and procedures, unless the relief below, and possibly other actions, are enacted.

## Relief

WHEREFORE, Plaintiffs Alan Campbell and Paloma Fernandez respectively request the following relief:

A.    Loyola Phoenix to publish, in a prominent place on the first page of its paper, the same number of corrections to be published on different days, for each day Loyola Phoenix wrote a story reporting Mr. Campbell was "arrested;" and to write a feature story to be published on the front page of the Loyola Phoenix interviewing Plaintiffs about their experience in the February 24, 2018 incident and subsequent actions.

B.    Requiring Evangeline Politis, Loyola Communications Specialist, and the Department of Campus Safety to publish a communication (in conjunction with Plaintiffs' agreement upon reviewing same) to make corrections and retractions of the February 25, 2018 Campus Safety Communication, to be published in the same manner as its February 25, 2018 statement, stating that:

1.    Plaintiffs did not interfere with the duties of the Campus Safety officers, nor did they fail to identify themselves as Loyola students;

2.    Mr. Campbell was never arrested and posed no threat to himself or to the safety of others, as reported by Campus Safety: and

3.  Mr. Campbell did not resist when the Campus Safety officer was handcuffing him;

C.  Requiring Jo Ann Rooney, President of Loyola, (with agreement by Plaintiffs upon their review of same), to issue a public, written letter of apology to Plaintiffs and to be published on the front page of the Loyola Phoenix;

D.  Requiring Department of Campus Safety (with agreement by Plaintiffs upon their review of same), to issue a public, written letter of apology to Plaintiffs to be published on the front page of the Loyola Phoenix;

E.  Requiring Loyola Phoenix (with agreement by Plaintiffs upon their review of same), to issue a letter of apology to Plaintiffs to be published on the front page of the Loyola Phoenix;

F.  Injunctive relief, requiring Loyola from further pursuing any student conduct tribunal against Plaintiffs (or any student who stood in front of or around the Campus Safety police car where Mr. Campbell was detained, preventing it from moving) from enacting any disciplinary actions against the Plaintiffs or the students referenced above, including, but not limited to, fines, probation, suspension, dismissal, or any other form of reprimand, public or private;

G.  Requiring Loyola to work in conjunction with Plaintiffs to develop required training for its Campus Safety officers regarding dealing with students and community members of different races, colors and ethnicities; cultural sensitivity and de-escalation techniques and methods of dealing with Loyola students and community members; and dealing with students' First Amendment Rights.

H.      Awarding Plaintiffs damages to the full extent proved to compensate for Plaintiffs' losses and continued losses resulting from Defendant's actions towards Plaintiffs and their reputations;

I.      Awarding Plaintiffs punitive and exemplary damages for Defendant's intentional acts in an amount sufficient to deter Defendant from any further wrongdoing in violation of federal and Illinois law, to be determined at trial;

J.      Awarding Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any general and compensatory damages as proved; and

K.      Any and all other relief to which Plaintiffs may be entitled to in accordance with law.

Dated: March 21, 2018                          Respectfully submitted,


                                               s/ Rafael E. Lazaro


                                               Rafael E. Lazaro, No. 6283342
                                               PAVIA & LAZARO, LLC
                                               321 S. Plymouth Ct., Suite 1250
                                               Chicago, IL 60604
                                               (312) 461-9900 / f. (773) 305-4068
                                               rlazaro@pavialazaro.com
                                               ATTORNEY FOR PLAINTIFFS